IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SUKHWINDER SINGH KAILA, | |
| Plaintiff, | |
| v. | Civil No. 20-3145 (RMB/AMD) |
| MERRICK GARLAND, *et al.*, | **OPINION** |
| Defendants. | |

**APPEARANCES**

Chintan A. Desai
Firouzeh Nur-Vaccary
Kim IP Law Group PLLC
129 W. Evesham Road
Voorhees, New Jersey 08043

　　　*On behalf of Plaintiff*

Alex D. Silagi
Enes Hajdarpasic
United States Attorney's Office, District of New Jersey
970 Broad Street
Newark, New Jersey 07102

　　　*On behalf of Defendants*

**RENÉE MARIE BUMB, United States District Judge**

　　　This matter comes before the Court upon the Motion for Summary Judgment

filed by Defendants Merrick Garland, Attorney General of the United States;

Alejandro Mayorkas, Secretary of the Department of Homeland Security ("DHS");

Tracy Renaud, Acting Director of the United States Citizenship and Immigration

Services ("USCIS"); and Larry C. Denayer, Acting Deputy Director of USCIS (collectively, "Defendants"). [Docket No. 28.] For the reasons set forth below, the Court will grant Defendants' Motion.

## I.   FACTUAL BACKGROUND

### A.   Plaintiff's Entry, Arrest, and Immigration Court Proceeding in the U.S.

Plaintiff Sukhwinder Singh Kaila, claiming civil unrest, left Punjab, India, and was arrested by U.S. Border Patrol agents in New York for illegally entering the United States from Canada on November 7, 1993.[1] [Docket No. 29-2, at 18–19; Docket No. 29-3, at US_984.] Plaintiff has since admitted that he knew he was being arrested at the time. [Docket No. 29-1, at 23:18–19 ("[I]t was . . . really disturbing for me that I was arrested.").] At his deposition, he testified that, while he and his companions were riding a bus to New York City, Border Patrol agents boarded the bus. [*See id.* at 21:20–24.] While Plaintiff at that time did not appreciate what Border Patrol was, specifically, he nevertheless "knew" that the individuals who had boarded the bus were "some kind of police." [*Id.* at 22:17–22.] By Plaintiff's own telling, he was then taken off the bus and transported to a building by car. [*Id.* at 23:3–13.] Although, again, Plaintiff did not specifically appreciate that the building was a Border Patrol facility, "at that time [he] thought maybe [it was a] jail." [*Id.* at

---

[1] As noted below, Plaintiff gained permanent residence status in Canada on December 17, 1999. [Docket No. 29-10, at US_100.] The record does not make clear how Plaintiff was granted such status from the Canadian authorities.

24:4–8.] He has also since testified that he was "put . . . in handcuffs" when he was arrested. [*Id.* at 24:20–22.]

At the arresting agents' local station, and with the help of a translator, Plaintiff identified himself as "Sukwinder Singh"[2] and proceeded to sign his name as "Sukhwinder Singh" four times during the encounter. [*See* Docket No. 29-1, at 29:8–30:4; Docket No. 29-3, at US_984, 986, 991, 993]. Also, one of Plaintiff's signatures certified, under penalty of perjury, that all the information on his application was correct and true.[3]

Thereafter, Plaintiff received service and requested a deportation hearing before the Immigration Court, and Immigration and Naturalization Services ("INS") initiated a removal proceeding against him that charged Plaintiff with entering the United States without inspection. [Docket No. 29-3, at US_986, 991; Docket No. 29-4, at 1.] During that encounter, Plaintiff signed his removal proceeding notice, also translated into Punjabi, and was identified as Alien Number A29 700 600. [Docket No. 29-4, at 1–3.]

On May 5, 1994, Plaintiff failed to appear in Immigration Court despite the translation services and signed acknowledgements. [Docket No. 29-5, at 3.] In accordance with INS's procedure, the Immigration Judge administratively closed

---

[2] This misspelling of Plaintiff's first name appears to be the result of a typographical error by the Border Patrol Agent who filled out the relevant forms.

[3] Plaintiff also signed and certified all subsequent immigration related applications, under penalty of perjury, to attest that the information he provided in those applications was correct and true.

Plaintiff's removal proceeding, which removed Plaintiff's case from the Immigration Court's calendar until either party filed a recalendar request. [*Id.*; Docket No. 28-3, ¶ 8].

## B.   Plaintiff Files Form I-589 and Both Form I-485 Applications and Is Ultimately Granted Permanent Resident Status

Despite his failure to appear before the Immigration Judge, Plaintiff remained in the United States until November 1994. [Docket No. 29-1, at 95:12–16.] Plaintiff first resided in Queens, New York, and then in Jersey City, New Jersey, working at a gas station from December 1993 to November 1994. [*Id.* at 95:17–96:8; Docket No. 29-6, at 3.] Plaintiff returned to India at that point, before reentering the United States on April 10, 1995. [Docket No. 29-1, at 76:24–77:8, 92:7–12.]

In September 1995, Plaintiff filed a Form I-589 claiming asylum, now identifying himself as "Sukhwinder Singh Kaila" (adding Kaila) with no preexisting Alien Number. [Docket No. 29-7, at US_969.] When Plaintiff was questioned about previous arrests in the United States, prior removal proceedings, and alternative names, he failed to truthfully disclose the relevant information. [*See generally* Docket No. 29-7.] Further, Plaintiff's I-589 application stated that he entered the country illegally through California in April 1995 and that his prior residence was in India from 1975 to 1995, when in reality he had entered illegally from Canada in 1993 and resided in New York and New Jersey from 1993 to 1994. [*Id.*] Subsequently, in October 1995, USCIS assigned Plaintiff a new Alien Number (A73 407 231) and granted his I-589 application, identifying him as an asylee. [Docket No. 29-8, at

4

US_96–97.]

In November 1996, Plaintiff filed his first asylum-based Form I-485 adjustment to change his asylee status to permanent resident status, and he identified himself as "Suhkwinder S. Kaila" (dropping Singh) along with his second Alien Number (A73 407 231). [Docket No. 29-9, at US_372, 377.] When questioned about previous arrests in the United States and prior removal proceedings, Plaintiff again omitted the proper identifying information and answered "No" to both inquiries. [*Id.* at US_376.] In 2003, USCIS denied Plaintiff's asylum-based Form I-485 due to his permanent residence status in Canada disqualifying him from the definition of an asylee in the United States.[4] [Docket No. 29-10, at US_99–100; *see also* Docket No. 29-1, at 117:2–6 (Plaintiff admitting that he "received [his] Canadian paperwork" in 1999).]

Two years after Plaintiff's first Form I-485 adjustment application was denied, he applied for an employment-based H-1B nonimmigrant visa, which USCIS approved in October 2005. [*See* Docket No. 29-13, at US_16.] Subsequently, Plaintiff filed a second Form I-485 in August 2006, this time under the name "Sukhwinder Singh Kaila" and again omitting his previous U.S. arrest and removal proceeding. [*Id.* at US_241–46.] USCIS then issued Plaintiff a third Alien number (A89 140 107) in October 2007, under the name "KAILA, Sukhwinder." [Docket No. 28-3, ¶ 12.] In February 2008, USCIS searched Plaintiff's RAP sheet, identified all associated

---

[4] Plaintiff gained permanent residence status in Canada on December 17, 1999. [Docket No. 29-10, at US_100.]

Alien numbers, and consolidated all three Alien files into his third Alien number (A89 140 107) in May 2008. [*Id.*, ¶ 13]. USCIS approved Plaintiff's second adjustment application in September 2011, making him a permanent United States resident. [Docket No. 29-11, at US_237.]

###   C.   USCIS Denies Plaintiff's Naturalization Application

Approximately five years after gaining permanent resident status, Plaintiff filed a Form N-400 naturalization application under the name "Kaila, Sukhwinder" in July 2016. [Docket No. 29-12, at US_53.] However, in that application Plaintiff included for the first time his 1993 arrest by United States Border Patrol agents, his previously issued Alien Number, and his prior Immigration Court removal proceeding. [*Id.* at US_53–78.] When prompted for an explanation upon answering "Yes" to previous arrests in the United States, Plaintiff responded, "I was arrested [in 1993] by US Border Patrol . . . when I tried to enter the United States without inspection . . . . I was placed in removal proceedings in Buffalo, NY under A29 700 600 but the Immigration Judge administratively closed my case on May 5, 1994." [*Id.* at US_78.]

In April 2019, USCIS denied Plaintiff's naturalization application and explained, in relevant part:

> You were actually interviewed, under oath, by legacy Immigration and Naturalization Service (INS) officers and USCIS officers for asylum, permanent residence, and naturalization. Each and every time, you concealed the true facts of your case and immigration history. . . . Your actions denote a lack of good moral character and willful disregard for the lawful immigration process. **In light of your history of**

> **misrepresentations**, USCIS can come to no other conclusion but that
> your false testimony is to obtain an immigration benefit.

[Docket No. 29-13, at US_17 (emphasis added).]

Further, USCIS explained that Plaintiff's naturalization was inadmissible

under § 121(h) of the Immigration and Nationality Act ("INA") because he was

required to apply and receive a waiver in order to adjust his status for making

material misrepresentations in prior applications, but Plaintiff never applied for that

admissibility waiver. [*Id.*] Nonetheless, even if Plaintiff was granted permanent

resident status by error, USCIS was prohibited from removing Plaintiff, or rescinding

his permanent resident status, because of the five-year statute of limitations under

8 U.S.C. § 1256(a). [*Id.* at US_18.] Thus the issue presented here is not whether

Plaintiff's permanent residence status should have been rescinded, but rather whether

USCIS's denial of his naturalization application was proper.

## D.    Plaintiff's Explanations for Misstatements in Applications

After USCIS denied Plaintiff's naturalization application, he filed a Form

N-336, asking USCIS to reconsider its decision. [Docket No. 29-14, at US_1000.]

Included in Plaintiff's Form N-336 were written explanations for his misstatements.

[*Id.*] Plaintiff's counsel claimed, in relevant part:

> The applicant did not have to disclose his 1993 entrance on any of the
> applications since that question was not specifically asked on the forms.
> Furthermore, with regard to his removal proceedings, the question on
> the I-589 and I-485 forms was as follows, to which the Applicant
> correctly responded "No": Have you ever been deported from the
> United States, or removed from the United States at government
> expense, excluded within the past year, or are you now in exclusion,
> deportation, removal or recission proceedings? The Applicant's removal

proceedings were administratively closed on May 5, 1994 so he was neither deported, removed, nor excluded. The applicant disclosed his 1993 apprehension and deportation proceedings on his naturalization application. With regard to the use of his name of "Sukhwinder Singh" . . . [this was a] scrivener's error[] on the part of the Border Patrol Agent ( . . . [who] failed to list the Applicant's full name). On all relevant paperwork since the removal hearing, the Applicant has listed his name as Sukhwinder Singh Kaila, so there has been no attempt at deception on his part.

[*Id.* at 1002, ¶ 1.]

Despite Plaintiff's explanations through Counsel, USCIS reaffirmed its denial of Plaintiff's naturalization application. [Docket No. 29-15, at US_2, 4.] USCIS's affirmation of its denial constituted final agency review of Plaintiff's naturalization application. [*Id.* at US_6.]

## II.    PROCEDURAL HISTORY

Plaintiff Kaila filed the Complaint in this matter on March 23, 2020, seeking a *de novo* review of USCIS's denial of his naturalization application. [Docket No. 1.] Plaintiff requests a reconsideration of USCIS's decision by claiming that he was "lawfully admitted" for permanent residence status, and his naturalization should be approved because any misstatement he made was innocent. [*Id.*]

Defendants filed the pending Motion for Summary Judgment on July 15, 2021, seeking the denial of Plaintiff's sought after *de novo* review and the affirmation of USCIS's decision to deny Plaintiff's naturalization application. [Docket No. 28.] Defendants claim that Plaintiff did not comply with the substantive immigration law requirements in order to seek naturalization. [*Id.*] Defendants assert that even though USCIS approved Plaintiff's second Form I-485 adjustment application, Plaintiff was

not "lawfully admitted" to the United States for permanent residence status considering the numerous misstatements USCIS subsequently uncovered upon comparing Plaintiff's naturalization application to his previously filed applications. [*Id.*] Defendants assert that USCIS's denial was proper because Plaintiff's misstatements in his prior immigration applications fit the statutory definition of material misinformation, which preclude an applicant from a lawful admission. [*Id.*] Plaintiff timely filed his brief in opposition on August 24, 2021. [Docket No. 33.] Defendants timely filed their reply brief on September 14, 2021. [Docket No. 35.]

The Court held Oral Argument on November 23, 2021. [Docket No. 37.] There, the parties disputed, among other things, whether the willfulness of Plaintiff's misstatements was relevant: Defendants argued that Plaintiff's mindset is irrelevant, while Plaintiff argued it was dispositive. At Oral Argument, the Court ordered the parties to file supplemental briefing and indicated that, if Plaintiff could point to any caselaw showing that Plaintiff's misinformation had to be willful for his naturalization application to be denied, then the Court would hold an evidentiary hearing to determine whether or not Plaintiff's misinformation was willful in this case. However, Defendants' supplemental brief provides ample authority showing that Plaintiff's mindset is irrelevant, [*see* Docket No. 38], and Plaintiff seems to have abandoned this argument in his supplemental brief, instead focusing solely on whether Plaintiff's omissions were **material**, [*see* Docket No. 39]. Therefore, the Court deems it unnecessary to hold an evidentiary hearing as it had initially proposed at Oral Argument.

### III.    JURISDICTION

The Court exercises subject matter jurisdiction over this case pursuant to 8 U.S.C. § 1421(c).

### IV.    STANDARD

#### A.    Summary Judgment

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonably jury [to] return a verdict for the nonmoving party." *Id.*

The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." *Connection Training Servs. v. City of Phila.*, 358 F. App'x 315, 318 (3d Cir. 2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." *Id.*

In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: they "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995);

*accord Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) (noting that "speculation and conjecture may not defeat a motion for summary judgment") (citing *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009)). Failure to sustain this burden will result in entry of judgment for the moving party.

### B.    Denial of Naturalization

A district court's review of naturalization denials "shall be *de novo*, and the court shall make its own findings of fact and conclusions of law." 8 U.S.C. § 1421(c). "As a consequence, judicial review of naturalization denials 'is not limited to any administrative record but rather may be on facts established in and found by the district court *de novo*.'" *Saliba v. Att'y Gen.*, 828 F.3d 182, 189 (3d Cir. 2016) (quoting *Aparicio v. Blakeway*, 302 F.3d 437, 445 (5th Cir. 2002)) (citing *Abulkhair v. Bush*, 413 F. App'x 502, 507–08 (3d Cir. 2011)).

In making this determination, however, the applicant bears the burden of proving, by a preponderance of the evidence, that she or he meets all of the requirements and is entitled to naturalization. 8 C.F.R. § 316.2(b); *see also Bagot v. Ashcroft*, 398 F.3d 252, 256–57 (3d Cir. 2005); *Abulkhair*, 413 F. App'x at 508. In order to meet this burden, the applicant is required to put forth evidence of her or his "strict compliance with all the congressionally imposed prerequisites" to citizenship. *Haser v. Brown*, No. 18-1383, 2020 U.S. Dist. LEXIS 32174, at *14 (W.D. Pa. Feb. 25, 2020) (first citing *Fedorenko v. United States*, 449 U.S. 490, 506 (1981); and then citing *United States v. Szehinskyj*, 277 F.3d 331, 334 (3d Cir. 2002)). Moreover, "the

burden is on the alien applicant to show his eligibility for citizenship in every respect." *INS v. Pangilinan*, 486 U.S. 875, 886 (1988) (quoting *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967)). Thus, "when doubts exist concerning a grant of [citizenship] . . . they should be [generally] resolved in favor of the Unites States and against the claimant." *United States v. Manzi*, 276 U.S. 463, 467 (1928); *see also Bagot*, 398 F.3d at 257; *Ogundoju v. Att'y Gen.*, 390 F. App'x 134, 137 (3d Cir. 2010).

"The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." 8 U.S.C. § 1101(a)(20). Multiple circuits have noted that this definition is "somewhat circuitous, and where there is ambiguity, we must give deference to the agency's interpretation, if it is reasonable." *Arellano-Garcia v. Gonzales*, 429 F.3d 1183, 1186 (8th Cir. 2005) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)); *Injeti v. U.S. Citizenship & Immigr. Servs.*, 737 F.3d 311, 315 (4th Cir. 2013). The Third Circuit adopted a similarly deferential standard, noting that it was "especially aware that the INS's interpretations of the statutes it is charged with administering have typically been afforded a great deal of deference." *Bamidele v. INS*, 99 F.3d 557, 561 (3d Cir. 1996). The Board of Immigration Appeals ("BIA") has also explained that lawful admission requires compliance with all substantive legal requirements and is not a mere procedural regularity. *In re Koloamatangi*, 23 I. & N. Dec. 548, 550 (B.I.A. 2003) (quoting *In re Longstaff*, 716 F. 2d 1439, 1441 (5th

Cir. 1983)).

"According to the BIA, an alien who has obtained lawful permanent resident status by fraud, or who was otherwise not entitled to it, has not been lawfully admitted." *Koszelnik v. Sec'y of Dep't of Homeland Sec.*, 828 F.3d 175, 180 (3d Cir. 2016) (citing *Koloamatangi*, 23 I. & N. Dec. at 550–51). The Third Circuit in *Gallimore v. Attorney General of the United States*, found that even in cases not involving fraud, a grant of permanent resident status does not meet the standard of "lawful admission" if the applicant was not legally entitled to it **for any reason**. 619 F.3d 216, 224 (3d Cir. 2010) (citing *Koloamatangi*, 23 I. & N. Dec. at 550) (emphasis added). Further, the Third Circuit also adopted the BIA's position that lawful admission requires strict compliance with both substantive and procedural legal requirements. *Id.* at 223 (citing *In re Longstaff*, 716 F.2d at 1441).

## V.   ANALYSIS

As discussed above, Defendants move for summary judgment to deny Plaintiff's sought after *de novo* review and to affirm USCIS's denial of Plaintiff's naturalization application. [Docket No. 28-1.] In support of their Motion, Defendants argue that "Plaintiff failed to show he was a 'lawfully admitted' permanent resident under 8 U.S.C. § 1427(c)" for two independent reasons: (1) because "USCIS lacked jurisdiction to adjust his status" and (2) because "Plaintiff made material omissions in his prior applications." [*Id.* at 13–26 (cleaned up).] Plaintiff refutes Defendants' arguments, first arguing that "USCIS retained

jurisdiction over Plaintiff's adjustment of status application as Plaintiff departed the United States" and then arguing that "Plaintiff's omissions were not material." [Docket No. 33, at 6–14.] The Court will grant Defendants' Motion on the latter independent basis that Plaintiff's previous omissions were material. Therefore, the Court need not address the jurisdictional argument.

### A.   Compliance with Substantive Legal Requirements

First, the Court will consider whether Plaintiff's grant of permanent resident status was in compliance with the substantive legal requirements of immigration laws. 8 U.S.C. § 1429. The Third Circuit has held that an applicant does not substantively comply with the relevant immigration law's legal requirements if she or he either obtained permanent resident status through fraud or "was otherwise not entitled to it." *Koszelnik*, 828 F.3d at 180. An applicant is "otherwise not entitled" to permanent resident status if the applicant provides "material misinformation" despite certifying under penalty of perjury that all provided information was true and correct on her or his application. *See id.* (citing *Injeti*, 737 F.3d at 318 (4th Cir. 2013)). The Third Circuit has approvingly cited a Fourth Circuit case as holding that "because 8 C.F.R. § 103.2(a)(2) requires an applicant to certify that all information contained in the application 'is true and correct,' an applicant fails to comply with the relevant legal requirements for admission when material information is omitted on his application, 'regardless of whether the misrepresentation on [the] application was willful." *Id.* at 180 n.20 (quoting *Injeti*, 737 F.3d at 318).

However, misinformation is material if it "tends to shut off a line of inquiry

14

which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded." *Id.* at 180 (quoting *Matter of Kai Hing Hui*, 15 I. & N. Dec. 288, 289 (B.I.A. 1975)). Whether the misinformation would have actually resulted in a different decision is not the operative question: "[F]inding that a misrepresentation is material does not require concluding that it necessarily would have changed the relevant decision." *Injeti*, 737 at 316. In *Koszelnik*, the Third Circuit held that the applicant's failure "to include his original assigned [Alien] number and . . . to disclose the order of deportation that was pending against him" was a clear example of the applicant not conforming to substantive legal requirements when the applicant was aware that information existed. *Koszelnik*, 828 F.3d at 180–81.

Here, it is undisputed that Plaintiff did not disclose (1) that he had been arrested in 1993, (2) his initial A-number on his asylum application, and (3) that he had lived in the United States from 1993 to 1994.[5] [*See* Docket No. 33, at 10–12; Docket No. 29-1, at 95:17–96:8; Docket No. 29-7, at US_974.] Plaintiff blames the first two of these omissions on not understanding what the documents in question required: he claims that "he believed the question about arrests referred to arrests in India only" and that "he did not know what [an A-number] was or what it referenced" when he was filling out the relevant forms. [*Id.*] He blames the third on

---

[5] Defendant argues that Plaintiff omitted other pieces of material information, as well. [*See* Docket No. 28-1, at 19.] Because the Court relies only on the omitted pieces of information discussed above, it will not address Defendants' remaining arguments.

his attorney at the time—who he claims failed to include the relevant information on the application—but insists that "it was not [his] intention not to add" that information. [*See* Docket No. 29-1, at 98:4–100:5.] However, as discussed above, Plaintiff's state of mind is irrelevant in determining whether or not the misinformation was material.[6]

Instead, the relevant question is whether the misinformation "tend[ed] to shut off a line of inquiry which [was] relevant to [Plaintiff's] eligibility and which might well have resulted in a proper determination that he be excluded." *Koszelnik*, 828 F.3d at 180 (quoting *Matter of Kai Hing Hui*, 15 I. & N. Dec. 288, 289 (B.I.A. 1975)). Here, the Court finds that the information Plaintiff omitted did so shut off a line of inquiry relevant to Plaintiff's eligibility. First, Plaintiff's failure to disclose his initial 1993 arrest by Border Patrol on every application other than his Form N-400

---

[6] Moreover, the Court notes that Plaintiff's assertion about why he failed to disclose his arrest does not save his case, given that the application asked: "Have you ever, **in or outside the U.S.**: been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance, excluding traffic violations?" [Docket No. 29-9, at US_376 (emphasis added).]

Plaintiff also argues that his omission of his 1993 arrest "was not material because due to the legal insufficiency of the Order to Show Cause (OSC), when . . . Plaintiff subsequently departed the United States in 1994, the Immigration Court lost jurisdiction over his case." [Docket No. 39, at 2–4.] Plaintiff argues that the omission, therefore, was immaterial "because he would have still obtained the benefit of asylee status and permanent residence." [*Id.* at 4.] Even if that were the case, however, Plaintiff applies the incorrect standard in making his argument. As noted throughout this Opinion, the question is whether the misinformation "tend[ed] to shut off a line of inquiry which [was] relevant to [Plaintiff's] eligibility and which might well have resulted in a proper determination that he be excluded." *Koszelnik*, 828 F.3d at 180 (quoting *Matter of Kai Hing Hui*, 15 I. & N. Dec. 288, 289 (B.I.A. 1975)). Applying that standard, the Court disagrees with Plaintiff's argument that the alleged insufficiency of the OSC renders Plaintiff's omission immaterial.

application clearly "shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded." *See id.* Plaintiff disclosing his arrest at the border would have certainly caused further investigation into Plaintiff's immigration history and factored into his eligibility determination. Further, including his arrest could have uncovered other identifying information that Plaintiff omitted in numerous applications, such as his removal proceeding, his previous Alien numbers, his use of alternative names, and the fact that he had lived in the United States for over a year.

Moreover, Plaintiff's omission of his previous arrest, his prior Alien number, and the fact that he had lived in the United States for over a year, "shut off a line of inquiry" for immigration officials as well. The inclusion of this identifying information could have led immigration officials to inquire into Plaintiff's immigration history, most likely uncovering his 1993 arrest. Further, disclosing this information could have also changed immigration officials' decision on Plaintiff's status. Thus, in addition to Plaintiff's omission of his arrest, Plaintiff's omission of information similar to the applicant in *Koszelnik* (who failed to disclose a previous matter in Immigration Court and a prior Alien number) also "might well have resulted in a proper determination that he be excluded or his status changed," and qualifies as material.

Because Plaintiff provided "material misinformation" on his applications, he was "otherwise not entitled to" permanent resident status. *See Koszelnik*, 828 F.3d at 180 (citing *Injeti*, 737 F.3d at 318). As such, his grant of permanent resident status

was not in compliance with the substantive legal requirements of immigration laws. *See* 8 U.S.C. § 1429. Therefore, the Court will conclude that Plaintiff's application for naturalization was properly denied and will grant Defendants' Motion for Summary Judgment.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment [Docket No. 28]. An accompanying Order shall issue.

January 25, 2022                              s/Renée Marie Bumb
Date                                          Renée Marie Bumb
                                              United States District Judge